UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

TWIN BEAUTY LLC d/b/a KOOL
KRAFTS LLC,

                Plaintiff,

    v.

NR INTERACTIVE LLC and NIR
RODRIGUEZ,

                Defendants.

-------------------------------------------------------x

**MEMORANDUM AND ORDER**
1:24-cv-7412 (RJD) (RML)

RAYMOND J. DEARIE, United States District Judge:

    Plaintiff Twin Beauty LLC brings various claims challenging defendants' use of Amazon's complaint process to assert that plaintiff sold books infringing on defendants' copyrights. This Court denied plaintiff's motion for a temporary restraining order and preliminary injunction because it failed to establish a reasonable probability of ultimate success in showing that this Court had personal jurisdiction over defendants. *See* Mem. & Order (Dkt. #27).

    After plaintiff amended the complaint, defendant Nir Rodriguez again moves to dismiss. Plaintiff also moves for default judgment against defendant NR Interactive LLC ("NRI"). Because the amended complaint does not state a *prima facie* case for personal jurisdiction over defendants, the Court grants the motion to dismiss, denies the motion for default judgment, and dismisses the complaint without prejudice.

## BACKGROUND

    The Court assumes familiarity with the facts and allegations of this case, which focus on conflicting copyright claims under the Digital Millenium Copyright Act ("DMCA").

1

Plaintiff Twin Beauty LLC is organized and maintains its principal place of business in New York. Am. Compl. ¶ 8 (Dkt. #33). Its sole principal resides in Brooklyn. *Id.* ¶ 9. In 2019, the company commissioned artists to create a book about origami ("Origami Book"), for which it obtained a copyright registration and sold on Amazon.com. *Id.* ¶¶ 28–31. Defendant NRI is organized in New Mexico and maintains its principal place of business in Florida. *Id.* ¶ 10. Plaintiff states that NRI's only principal, defendant Rodriguez, claims to reside in Japan. *Id.* ¶ 14.

The amended complaint alleges that defendants abused Amazon's DMCA complaint process to frustrate plaintiff's sale of copies of the Origami Book. On October 7, 2024, defendants submitted a DMCA takedown notice to Amazon claiming that the Origami Book violated defendants' copyright in a competing book. *Id.* ¶ 32. Amazon briefly delisted plaintiff's book, forcing plaintiff to file a DMCA counternotice. *Id.* ¶ 47. Defendants countered by filing a "false copyright claim with the Copyright Claims Board" to delay Amazon from restoring the listing. *Id.* ¶ 55. After Amazon reinstated the listing, defendants filed yet another DMCA complaint on November 20, 2024, disrupting plaintiff's holiday sales. *Id.* ¶ 56.

Defendants deployed that strategy twice. On October 17, 2024, defendant Rodriguez filed a separate DMCA claim against one of plaintiff's other books, a guide on making paper airplanes ("Paper Planes Book"). *Id.* ¶ 48. Plaintiff again filed a counternotice, stating that it had published its book before defendants wrote theirs, and therefore could not have copied it. *Id.* ¶ 49. Once Amazon restored the listing, defendant Rodriguez filed a fresh DMCA complaint on Amazon.com. *Id.* ¶¶ 57–58.

Rodriguez emailed plaintiff on October 22. He unveiled plans to sue plaintiff for copyright infringement, ensuring that "Amazon will not reactivate [plaintiff's] products . . . during the holiday season." Oct. 22, 2024 Email, Ex. G (Dkt. #33-8). Doing so, Rodriguez warned, would

2

"freeze" plaintiff's "inventory" and "any pending payments from Amazon"—leaving it mired in "long and costly legal proceedings" unless it delivered "a proposal for an amicable resolution within the next 48 hours." *Ibid.*

Plaintiff opted to sue in this Court instead. On November 26, it moved for a preliminary injunction and temporary restraining order seeking to "enjoin[] Defendants and their parent companies, subsidiaries, affiliates, representatives, agents, and anyone acting in concert with them from submitting complaints against Plaintiff to or within the Amazon.com marketplace" and to "instruct[] Defendants and their parent companies, subsidiaries, affiliates, representatives, agents, and anyone acting in concert with them [to] immediately withdraw any complaints made against the Listings in order for Amazon.com to reactivate the Listings." Proposed TRO 1 (Dkt. #10). Rodriguez, proceeding *pro se*, moved to dismiss plaintiff's complaint and argued, *inter alia*, that this Court lacked personal jurisdiction over defendants. *See* Def. Nir Rodriguez's Mem. of L. in Supp. of Mot. to Dismiss 4–5 (Dkt. #7-1).

The Court denied the motion for a preliminary injunction on the ground that plaintiff failed to show a reasonable probability of successfully establishing jurisdiction over defendants. Mem. & Order 1, 15. But the Court determined that that assessment did "not necessarily entitle defendants to dismissal of plaintiff's suit." *See id.* at 15. Accordingly, plaintiff moved for leave to amend, then filed an amended complaint. *See* Am. Compl.

As amended, the complaint asserts seven claims. First, it seeks a declaratory judgment that the Origami and Paper Planes Books do not infringe on defendants' copyrights. *Id.* ¶ 92. Second, it alleges that defendants committed fraud on the Copyright Office when they asserted that their employee, rather than an independent contractor, created the defendants' origami book. *Id.* ¶¶ 37–38, 93–99; *see* 17 U.S.C. § 201(b). Third, it accuses defendants of knowingly misrepresenting

3

infringement in a DMCA takedown request in violation of 17 U.S.C. § 512(f). Am. Compl. ¶¶ 101–06. Fourth, it requests damages for copyright infringement. *Id.* ¶¶ 123–28. Finally, it attaches state tortious interference, unfair competition, and defamation claims. *Id.* ¶¶ 107–22.

Defendant Rodriguez again moves to dismiss, repeating his contention that this Court lacks personal jurisdiction. Notice of Nir Rodriguez's Mot. to Dismiss Pl.'s Am. Compl. 3 (Dkt. #35). Defendant NRI did not respond to plaintiff's complaint or appear in this case. Clerk's Certificate of Default (Dkt. #23). Plaintiff requested a certificate of default and moves for default judgment. Mot. for Default J. 1 (Dkt. #42).

## STANDARD OF REVIEW

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that jurisdiction exists, *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003), and the Court "may consider materials outside the pleadings," *Johnson v. UBS AG*, 791 F. App'x 240, 241 (2d Cir. 2019); *see Vasquez v. Hong Kong & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 245 n.1 (S.D.N.Y. 2020) (noting that a court evaluating a Rule 12(b)(2) motion "may look beyond the four corners of the complaint and consider materials outside of the pleadings, including accompanying affidavits, declarations, and other written materials"). Prior to discovery, "a plaintiff is required only to make a *prima facie* showing by pleadings and affidavits that [personal] jurisdiction exists." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996); *see Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013). Again, the Court construes all pleadings and affidavits in the light most favorable to the plaintiff and resolves all doubts in its favor. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).

4

Federal Rule of Civil Procedure 55 "provides a 'two-step process' for the entry of judgment against a party who fails to defend." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citation omitted). First, the party seeking default judgment must obtain entry of default against the party who has failed to defend under Rule 55(a). *Ibid.* Plaintiff has done so against NRI. Clerk's Certificate of Default. Second, the moving party must obtain entry of a default judgment under Rule 55(b). At the second step, a court "first assure[s] itself that it has personal jurisdiction." *See Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). If it lacks jurisdiction, the court may "dismiss an action *sua sponte*" rather than enter default judgment. *Ibid.* The standard for assessing jurisdiction is similar to that at the motion-to-dismiss stage: courts take the plaintiff's "factual allegations as true and draw all reasonable inferences in its favor," *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009), and the plaintiff need only make a "prima facie showing" of personal jurisdiction over the defendants, *SEC v. Aimsi Techs., Inc.*, 650 F. Supp. 2d 296, 301 (S.D.N.Y. 2009).

## DISCUSSION

This Court lacks personal jurisdiction over defendants under either Federal Rule of Civil Procedure 4(k)(1)(A) or Federal Rule of Civil Procedure 4(k)(2).

### I. Federal Rule of Civil Procedure 4(k)(1)

Because plaintiff fails to plead facts to make a *prima facie* showing that New York's long-arm statute permits personal jurisdiction over defendants, this Court lacks jurisdiction under Rule 4(k)(1). A federal court generally may exercise personal jurisdiction over a foreign corporation only if doing so would be permissible under the law of the state in which the federal court is located. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (citing Fed. R. Civ. P. 4(k)(1)(A)). That typically requires "a two-step analysis." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). First, the court "look[s] to the law of the

5

forum state to determine whether personal jurisdiction will lie." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013). "If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Chloe*, 616 F.3d at 164.

The amended complaint fails to plead that this Court has jurisdiction over the plaintiffs under New York's long-arm statute. Plaintiff's brief largely reprises the points made at the preliminary injunction stage. *Compare* Pl.'s Mem. of L. in Opp'n to Def.'s Mot. to Dismiss the Am. Compl. ("Opp'n to Def.'s Mot. to Dismiss") 6–9 (Dkt. #37), *with* Pl.'s Mem. of L. in Supp. of TRO & Prelim. Inj. ("Pl.'s Mot. for Prelim. Inj.") 3–5 (Dkt. #11). Because the plaintiffs now tender similar arguments, the Court applies a similar analysis. With respect to New York state law, the Court lacks general jurisdiction over defendants under New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") § 301 and specific jurisdiction under N.Y. C.P.L.R. §§ 302(a)(1), 302(a)(3)(i), and 302(a)(3)(ii). *See* Opp'n to Def.'s Mot. to Dismiss 6–7; Am. Compl. ¶ 23.

A. **N.Y. C.P.L.R. § 301**

The Court lacks general jurisdiction over defendants under N.Y. C.P.L.R. § 301.

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). "[E]xcept in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (citation omitted). For an individual defendant, general jurisdiction "comports with due process in the forum where he is 'at home,' meaning the place of 'domicile.'" *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (citation omitted).

6

This Court may not exercise general jurisdiction over either defendant. The amended complaint alleges that NRI is organized in New Mexico and maintains its principal place of business in Florida. *See* Am. Compl. ¶¶ 10–11. Rodriguez claims to reside in Japan. *See id.* ¶¶ 14–15. On these facts, plaintiff has not established a *prima facie* case that either party is "at home" in New York.

The amended complaint's insistence that defendants conduct business in New York falls short of establishing that either is present in New York. *See Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 762–63 (2d Cir. 1983) (holding that "an unspecified number of mail order sales of [defendant's] products in New York . . . are insufficient to satisfy section 301's 'doing business' test"); *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 n.2 (2d Cir. 2014) ("Not every company that regularly 'does business' in New York is 'at home' there."). Nor does the amended complaint identify exceptional circumstances warranting a departure from these rules.

### B.   N.Y. C.P.L.R. § 302(a)(1)

Plaintiff fails to make a *prima facie* showing of specific jurisdiction over either defendant under N.Y. C.P.P.R. § 302(a)(1).

Under Section 302(a)(1), a court may exercise specific jurisdiction over a non-domiciliary "[a]s to a cause of action arising from . . . the acts enumerated in this section" if the domiciliary "transacts any business within" or "contracts anywhere to supply goods or services" in New York. "[A] court must decide whether the defendant (1) 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (citation omitted). Section 302(a)(1) "is a 'single act statute[,]' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were

7

purposeful and there is a substantial relationship between the transaction and the claim asserted." *See Chloe*, 616 F.3d at 170 (citation omitted).

The amended complaint rests on the same two categories of contacts alleged in the original complaint: defendants' sales of books via Amazon to New York customers, and defendant Rodriguez's email to plaintiff demanding a settlement offer. Opp'n to Def.'s Mot. to Dismiss 6–7; Am. Compl. ¶ 23; Pl.'s Mot. for Prelim. Inj. 4. These contacts fail to state a *prima facie* case satisfying the requirements of Section 302(a)(1).

District courts in this Circuit routinely find that a defendant "transacts" business in New York if it offers products for sale to New York residents through a third-party online marketplace like Amazon, and there is evidence of at least one sale to a New York customer. *See Poof-Slinky, LLC v. A.S. Plastic Toys Co.*, No. 19-CV-9399 (ER), 2020 WL 5350537, at *4 (S.D.N.Y. Sept. 4, 2020) (citing cases); *Fab Habitat Corp. v. Houselights, LLC*, No. 22-CV-2986 (ALC), 2023 WL 6385977, at *7 (S.D.N.Y. Sept. 29, 2023); *Carson Optical, Inc. v. RQ Innovasion Inc.*, No. 16-CV-1157 (SIL), 2020 WL 1516394, at *3 (E.D.N.Y. Mar. 30, 2020) (citing cases). Simply alleging that defendants "regularly transact business in New York" is not enough. *Fab Habitat*, 2023 WL 6385977, at *7.

The amended complaint does not allege any facts showing that defendants transact business with New York customers. It states that defendants' book is "available for purchase" in New York, and that defendants "regularly transact[] business in New York by selling products on Amazon to customers in New York." Am. Compl. ¶¶ 40–41, 67. But that assertion reiterates the one in the original complaint, that defendants "regularly conduct business in New York through sales on Amazon.com." Compl. ¶ 10 (Dkt. #1). Neither identifies a single transaction between the defendants' business and the New York market. *See Deitrick v. Gypsy Guitar Corp.*, No. 16-CV-

8

616, 2016 WL 7494881, at *5 (S.D.N.Y. Dec. 28, 2016) (collecting cases finding conclusory the claim that a defendant "sells" or "d[oes] business" in New York). Unadorned with supporting facts, that restatement of the legal standard does not establish a regular course of business transactions.

True, the amended complaint attaches an Amazon receipt for a purchase of defendants' origami book on December 30, 2024. Amazon Receipt, Ex. E (Dkt. #33-5). But as this Court has noted, "[p]ost-lawsuit contacts are insufficient to show that a defendant was transacting business within New York for the purposes of long-arm jurisdiction." *Fab Habitat*, 2023 WL 6385977, at *7 (rejecting application of N.Y. C.P.L.R. § 302(a)(1) based on counsel's proof of purchase postdating the filing of the complaint).

Even if defendants did sell the Origami Book in New York markets, plaintiff has not shown that its claims "arise from" those sales. Under New York law, plaintiff must identify an "'articulable nexus' or 'substantial relationship' between the business transaction and the claim asserted." *Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 11 (N.Y. 2016) (quotation marks, ellipses, and citation omitted). An articulable nexus comprises "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *Licci*, 732 F.3d at 168–69 (citation omitted).

As before, the amended complaint alleges that out-of-state defendants injured the plaintiff by filing false DMCA takedown notices with Amazon. Am. Compl. ¶¶ 44–45, 56–58, 83. But as the Court noted in denying plaintiff's motion for a preliminary injunction, defendants' alleged "sales in New York have nothing to do with these claims." *Real Selling Grp. LLC v. ESN Grp.*, No. 20-CV-1468 (NRB), 2021 WL 535748, at *6 (S.D.N.Y. Feb. 12, 2021); *Mondellbahn Ott Hobbies, Inc. v. Velcro USA, Inc.*, No. 20-CV-3526 (LLS), 2021 WL 2012950, at *2 (S.D.N.Y.

9

May 20, 2021); *Common Cents Distribs., LLC v. CURLS Beauty Brands, LLC*, No. 20-CV-10369 (CM), 2021 WL 4226182, at *3–4 (S.D.N.Y. Sept. 15, 2021); *Exec. Park Partners LLC v. Benicci Inc.*, No. 22-CV-2560 (PMH), 2023 WL 3739093, at *6–7 (S.D.N.Y. May 31, 2023). *But see Shear Mobility, LLC v. Stoll*, No. 18-CV-163 (LJV) (JJM), 2018 WL 7624885, at *3 (W.D.N.Y. Oct. 10, 2018), *report and recommendation adopted*, 2019 WL 1207577 (W.D.N.Y. Mar. 14, 2019). So too here. Plaintiff's claims—about defendants' alleged abuse of the DMCA reporting system—are unrelated to defendants' alleged New York sales. (Pressing one's federal copyrights by filing DMCA notices and threatening to sue does not count as transacting business either. *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128–30 (2d Cir. 2013).)

That defendants "purposefully reached out to Plaintiff in New York to force a business relationship through extortion" also fails to state a *prima facie* case for personal jurisdiction under Section 302(a)(1). Opp'n to Def.'s Mot. to Dismiss 7. The amended complaint alleges that on October 22, 2024, defendant Rodriguez emailed plaintiff's principal Joshua Farkas expressing an intent to sue unless plaintiff delivered a settlement proposal within 48 hours. Oct. 22, 2024 Email. Filing suit would have led Amazon not to "reactivate [plaintiff's] products, which w[ould] remain inactive during the holiday season." *Ibid*.

That is precisely the argument the plaintiff made, and the Court rejected, in the original complaint. *See* Compl. ¶ 35; Mem. & Order 10. Threatening to sue a New York plaintiff for copyright infringement "in an unspecified locale and threatening litigation in an unspecified forum" does not constitute "transaction of business" under N.Y. C.P.L.R. § 302(a)(1). *Beacon Enters., Inc.*, 715 F.2d at 766; *Kiss Nail Prods., Inc. v. One Two Cosmetics, LLC*, No. 19-CV-536 (MKB), 2020 WL 2924614, at *5 (E.D.N.Y. Mar. 5, 2020) (citing cases). A party's New York activity must reach "beyond merely sending a 'cease and desist letter'" in an attempt to "settle

10

alleged legal claims"—such as by "frequently contact[ing]" the plaintiff to seek a business investment or negotiate a royalty agreement with the alleged copyright violators. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997).

The amended complaint alleges no such facts. Plaintiff identifies a single "extortion payment" email sent before it filed the complaint. Am. Compl. ¶ 23; Oct. 22, 2024 Email; *see also* Nov. 22, 2024 Email 1 (Dkt. #12-8) (identifying a second email demand sent *after* the first complaint was filed). And in sending it, defendant Rodriguez did not pitch an investment into its business, a copyright licensing deal, or a joint business venture. *See PDK Labs*, 103 F.3d at 1109. Drawing all reasonable inferences for plaintiff, the Court finds that the alleged statements attempt to settle legal claims—a distant cry from the commercial transactions described by *PDK Labs*.

Plaintiff notes that it "disclosed its New York address to Defendants" in its DMCA counternotices, placing them on notice that they allegedly disrupted the business of a New York merchant. Am. Compl. ¶ 45. But Section 302(a)(1) does not say that knowing a defendant's locale establishes personal jurisdiction. "'[M]ere knowledge that a plaintiff resides in a specific jurisdiction,' without more, does not subject [the defendant] to specific personal jurisdiction in New York." *Yak v. BiggerPockets, L.L.C.*, No. 19-CV-05394 (PMH), 2020 WL 5505351, at *5 n.7 (S.D.N.Y. Sept. 10, 2020) (citation omitted). (And for what it is worth, plaintiff disclosed the New York address of a "Josh Farkas," not the LLC itself. Submission, Ex. F (Dkt. #33-6).)

### C. N.Y. C.P.L.R. § 302(a)(3)

Plaintiff also fails to make a *prima facie* showing of specific jurisdiction over either defendant under N.Y. C.P.L.R. § 302(a)(3).

Under Section 302(a)(3), which governs jurisdiction over out-of-state torts, a court may exercise specific jurisdiction over a non-domiciliary who:

11

> commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.[1]

As with the Section 302(a)(1) analysis, plaintiff presents two candidates for tortious conduct: filing false reports with Amazon and sending an allegedly extortionate email to the plaintiff. Neither lays a basis for personal jurisdiction under Section 302(a)(3).

First, defendant Rodriguez's October 22, 2024, email fails to establish a basis for personal jurisdiction. In its prior memorandum and order, the Court held that plaintiff failed to show how the *email* caused injury within New York. Mem. & Order 12. The amended complaint continues to allege that the *DMCA complaints* caused the plaintiff to "los[e] all sales under its listing to its New York customers." Am. Compl. ¶ 23. But it fails to articulate how the loss of sales originated from the email, rather than from the DMCA complaints. *Id.* ¶ 79 (claiming that defendants' infringement notices harmed plaintiff's business). Rodriguez's email did not cause a New York injury.

That leaves defendants' complaints to Amazon. On this front, the amended complaint states an improved case for personal jurisdiction under N.Y. C.P.L.R. § 302(a)(3) by plausibly alleging harm in New York. In locating the injury, courts look to "the location of the original event which caused the injury." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) (brackets and citation omitted). The "original event" refers not to the location of the final economic injury, but that of "the first effect of the tort . . . that ultimately produced" it. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84–85 (2d Cir. 2001) (per curiam) (citation and quotation

---

[1] New York's statutory grant of jurisdiction would not extend to Plaintiff's defamation claims. N.Y. C.P.L.R. § 302(a)(3).

12

marks omitted). For instance, an employee who performs "a substantial part of" employment from New York but is fired during a New Jersey meeting experiences the "first effect of the tort"—"being removed from his job"—in New York. *Ibid.* Similarly, a New York business suffers New York injury if it lost "New York customers" or sales "in the New York market." *See Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 346 (S.D.N.Y. 2015) (citation omitted). Hence, claiming a non-existent copyright against a British company, such that its New York subsidiary would be unable to distribute a television series to a New York viewership, created an injury "in the state in which the customers were lost"—New York. *Granada Television, Int'l, Ltd. v. Lorindy Pictures Int'l, Inc.*, 606 F. Supp. 68, 72 (S.D.N.Y. 1984).

By those lights, the amended complaint plausibly alleges that plaintiff was injured in New York. The amended complaint states that defendants' DMCA complaints, which led Amazon to suspend plaintiff's listings, made it lose "all sales under its listings to its New York customers, which" in one year exceeded "$40,000.00 in the holiday season." Am. Compl. ¶ 23. That pleading—from which the Court reasonably infers that plaintiff sold a substantial number of origami books to New York customers—states a non-speculative case that plaintiff suffered a New York injury when it experienced the "first effect of the tort" in losing its New York customer base. *DiStefano*, 286 F.3d at 85 (citation omitted).

But the amended complaint does not state a *prima facie* case that defendants "regularly do[] or solicit[] business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods used or consumed or services rendered" in New York under Section 302(a)(3)(i). Plaintiff has not stated a *prima facie* case for any of these "four forms of ongoing New York activity." *Levans v. Delta Airlines, Inc.*, 988 F. Supp. 2d 330, 339 (E.D.N.Y. 2013). As previously explained, plaintiff failed to identify any *bona fide* sale in New York. Nor

13

does plaintiff's allegation that defendants' book is "available for purchase by New York customers" amount to a regular course of solicitation. Am. Compl. ¶ 40. (This Circuit's courts reject the sufficiency of the "mere existence of a web site" allowing a "user to easily order" goods, without evidence of the merchant doing "*any* business in New York." *A.W.L.I. Grp. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 573 (E.D.N.Y. 2011)). Rodriguez's singular email demanding to settle the copyright dispute does not qualify as a "persistent course of conduct" either. Finally, the amended complaint's bald assertion that defendants "sell" books "into the New York market" does not suffice. *See Regenlab USA LLC v. Estar Techs. Ltd.*, No. 16-CV-08771, 2017 WL 3601304, at *4 (S.D.N.Y. Aug. 17, 2017). Accordingly, plaintiff has not stated a *prima facie* case that defendants "regularly" do or solicit business, or "derive[] substantial revenue" from their sales in New York. N.Y. C.P.L.R. § 302(a)(3)(i).

The amended complaint's cited cases are inapposite. *See SnapPower v. Lighting Def. Grp.*, 100 F.4th 1371 (Fed. Cir. 2024); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008); *Bancroft & Masters, Inc. v. August Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000). Those cases are about defendants who allegedly filed complaints to Internet platforms to disrupt plaintiffs' business activities. But they do not answer how defendants engaged in persistent New York conduct. *See, e.g.*, *SnapPower*, 100 F.4th at 1375 (regulating the federal "purposeful availment" standard); *Dudnikov*, 514 F.3d at 1074–75 (same); *Bancroft & Masters*, 223 F.3d at 1087 (same). So they offer cold comfort in New York, whose personal-jurisdiction requirements ask for more than the U.S. Constitution does.

That leaves the other route: whether defendants "expect[ed] or should reasonably [have] expect[ed]" their allegedly tortious conduct to have had consequences in New York *and* derive "substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3)(ii). It

14

is unclear whether defendants expected to impose New York consequences, even assuming they saw plaintiff "disclose[] its New York address" in its DMCA counternotice. Am. Compl. ¶ 45. Tracking "federal constitutional due process limits," Section 302(a)(3)(ii) requires a plaintiff to show that the defendant reasonably foresaw being sued in New York and purposefully chose to affiliate with the state. *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999). The "residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction," which must be based upon "a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there." *Fantis Foods, Inc. v. Standard Importing Co.*, 402 N.E.2d 122, 126 (N.Y. 1980).

Defendants' alleged knowledge in this case rests solely on the fact that they knew plaintiff's headquarters were in New York. Am. Compl. ¶ 23. That's not enough to show that it expected to impose New York injuries, or made a "discernable effort" to serve New York markets. *See Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 300 (S.D.N.Y. 1996); *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 410 (S.D.N.Y. 2021). What made sense in 1996 makes sense in 2025, where online retailers inside New York offices may earn their keep outside New York markets.

Even if plaintiff could establish the expectation prong, it does not meet the "substantial interstate commerce revenue component." *Ingraham v. Carroll*, 90 N.Y.2d 592, 599 (1997). The revenue rule tests whether defendant is "economically big enough" to defend suit in New York. *Ibid.* (citation omitted). While "no specific dollar threshold" sets when revenue becomes "substantial," this Court has held that "making $2,500 to $5,000 a month" does not suffice. *Foster v. Price*, No. 22-CV-2031 (LDH) (LB), 2025 WL 974604, at *3 (E.D.N.Y. Mar. 31, 2025); *compare id.*, *with Mfg. Tech., Inc. v. Kroger Co.*, No. 06-CV-3010 (JSR), 2006 WL 3714445, at

15

\*2–3 (S.D.N.Y. Dec. 13, 2006) (finding millions of dollars in gross revenue earned in over a dozen states sufficient).

The amended complaint, like before, makes no allegations as to how much revenue NRI earns from interstate or international commerce. Because defendant Rodriguez is allegedly the only principal for NRI, plaintiff has not established how much of NRI's income to attribute to him either. *See N. Fork Partners Inv. Holdings, LLC v. Bracken*, No. 20-CV-2444, 2020 WL 6899486, at \*11–12 (S.D.N.Y. Nov. 23, 2020). Therefore, plaintiff has not adequately pleaded facts establishing a *prima facie* case that this Court has jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii).

## II.   Federal Rule of Civil Procedure 4(k)(2)

This Court also lacks personal jurisdiction over defendants under Federal Rule of Civil Procedure 4(k)(2). Per this Rule, a plaintiff may raise a claim "under federal law" if the defendant "is not subject to jurisdiction in any state's courts of general jurisdiction" and "exercising jurisdiction is consistent with the United States Constitution and laws." The rule permits federal courts to exercise jurisdiction over defendants "with sufficient contacts with the United States generally, but insufficient contacts with any one state in particular." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 807 (S.D.N.Y. 2005). At issue is the first requirement. Courts in this Circuit sometimes require the plaintiff to "certify that, to their knowledge, the foreign defendant is not subject to jurisdiction in any other state." *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 125 (S.D.N.Y. 2020). At other times, courts ask plaintiff to "make a prima facie showing" that no state's courts have jurisdiction over the defendants. *In re S. Afr. Apartheid Litig.*, 643 F. Supp. 2d 423, 428–29 (S.D.N.Y. 2009).

Plaintiff has not met either standard. The amended complaint, which is not verified or sworn, attaches no certification that Defendants are not subject to jurisdiction in any state. *Minden Pictures, Inc. v. Grupo Televisa, S.A.B.*, 738 F. Supp. 3d 458, 469 (S.D.N.Y. 2024). Even if it

16

*were* certified, it alleges that defendants lack "sufficient contacts with any other state that would subject either of them to general jurisdiction in another state." Am. Compl. ¶ 27. That misstates the rule. Rule 4(k)(2) asks whether defendant "is not subject to personal jurisdiction" in any state's courts of general jurisdiction, not whether defendant is subject to general jurisdiction in any state's courts. *See Dardana Ltd. v. Yuganskneftegaz*, 317 F.3d 202, 207 (2d Cir. 2003); Fed. R. Civ. P. 4(k) advisory committee's note to 1993 amendment (applying Rule 4(k)(2) against those "who cannot be served under any state law"). Nor can this Court extrapolate a *prima facie* case from the alleged facts, because the amended complaint does not meaningfully discuss whether defendants operate business or otherwise avail themselves of the privilege of acting in other states. Indeed, NRI operates in Florida and is organized in New Mexico; Mr. Rodriguez uses a Florida business address. Am. Compl. ¶¶ 10–14. Plaintiff has not met its burden to lay jurisdiction under Rule 4(k)(2).

## CONCLUSION

For the foregoing reasons, defendant Rodriguez's motion to dismiss the amended complaint is granted, plaintiff's motion for default judgment against NRI is denied, and the amended complaint is dismissed without prejudice as to both defendants.

SO ORDERED.

                                                  /s/ Raymond Dearie
                                                  RAYMOND J. DEARIE
                                                  United States District Judge

Dated: December 1, 2025
       Brooklyn, New York